UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| CNG FINANCIAL, *et al.* | : | Case No. 1:21-cv-460 |
| Plaintiffs, | : | |
| | : | Judge Timothy S. Black |
| vs. | : | |
| ROBERT BRICHLER, | : | |
| Defendant. | : | |
| | : | |

**ORDER DENYING MOTION TO COMPEL ARBITRATION (Doc. 12)**

This civil case is before the Court on Defendant Robert Brichler's motion to compel arbitration and dismiss, or alternatively stay, the action pending arbitration (Doc. 12), the Plaintiff's responsive memorandum (Doc. 11); Defendant's notice of controlling authority (Doc. 34) and Plaintiff's response to the notice of controlling authority (Doc. 35).

**I. BACKGROUND**

The following factual background is as alleged by Plaintiff Axcess[1] in its Complaint (Doc.1), motion for preliminary injunction (Doc. 2), and the uncontroverted facts as established in the briefing on this motion to compel. (Docs. 11 and 12). Plaintiff Axcess creates consumer loan products and provides loan servicing. (Doc. 1 at ¶¶ 8, 9). Starting in 2016, Axcess employed Defendant Robert Brichler. (*Id*. at ¶11). Four years

---

[1] Axcess's parent company CNG Financial is also a Plaintiff. For purposes of this motion, the Court considers Plaintiffs to constitute a single identity referred to as "Axcess."

into his employment, Brichler earned a promotion to Chief Technology Officer ("CTO"). *Id.* In that role, among other things, he led software development efforts, managed data infrastructure and data security; oversaw third-party integrations on Axcess's platforms, and participated in leadership meetings that allegedly gave him access to sensitive information. (*Id.* at ¶¶ 17, 21, 27, 28).

Throughout his time at Axcess, Brichler and Axcess executed a series of non-compete and dispute resolution agreements. Three are relevant to this motion specifically. (Doc. 11 at 2; Doc. 12). In 2020, Brichler executed a non-compete agreement ("2020 Non-Compete"), and, at the very same time, a dispute resolution agreement ("2020 DRA"). (Doc 12-4). The 2020 Non-Compete contains prohibitions against employment with a competitor, misappropriating confidential information, and disparaging Axcess. (Doc. 11-3). The 2020 Non-Compete references the 2020 DRA—in fact, the 2020 DRA is appended as an exhibit to the 2020 Non-Compete. (*Id.*, PageID# 134-143). By its terms, the 2020 DRA empowers either Brichler or Axcess to elect arbitration or mediation to resolve disputes with only a few enumerated exceptions not relevant here. (*Id.*).

Although executed at the same time, with one referencing the other, the 2020 Non-Compete and the 2020 DRA are in apparent conflict on how to enforce a breach of the 2020 Non-Compete. The 2020 Non-Compete states, "*with the exception of an action for equitable relief arising from a breach of this Agreement*, any controversy…shall be governed by Axcess's Dispute Resolution Agreement…." (Doc 11-3, PageID# 134) (emphasis added). Thus, read on its own, the 2020 Non-Compete contains a carve-out

2

from the 2020 DRA for equitable relief to enforce the terms of the 2020 Non-Compete. (*Id.*) The 2020 DRA, on the other hand, states that either party can force arbitration for "covered claims" which include "any statutory, tort, contractual or *equitable* (i.e., non-monetary) claim". (*Id.*. PageID# 137) (emphasis added). When describing the mutuality of obligations, the 2020 DRA is even more specific. "For example," it reads, "you may elect to arbitrate our claim against you for violation of your *non-competition agreement* or for *misappropriation of company assets*." (*Id.*, PageID #138) (emphasis added).

When promoted to CTO in February 2021, Brichler executed a new Non-Compete ("2021 Non-Compete"). (Doc. 1-2). The 2021 Non-Compete was not paired with a dispute resolution agreement and contains no language referencing arbitration at all. (*Id.*).

In the 2021 Non-Compete, the parties agree that "any dispute among the parties related to compliance with or the breach of any term of this Agreement shall be exclusively litigated in a state or federal court of competent jurisdiction." (Doc. 1-2, PageID# 27). In another section, titled "Certain Remedies," the agreement states that Axcess "shall be entitled as a matter of right…to obtain a restraining order or other equitable or extraordinary relief from any court of competent jurisdiction…" to restrain a breach of the agreement. (*Id.* at PageID# 25-26). In a merger clause, the parties further agree that the 2021 Non-Compete "contains the entire agreement of the parties about the subjects in it and it replaces all prior…agreements" except that previous "restrictive covenants…shall survive…." (*Id.* at PageID# 26).

A few months after his promotion and his signing of the 2021 Non-Compete, Brichler left Axcess and joined another company, Lendly. (Doc. 1 at ¶36). Axcess then

3

filed the present suit alleging that Lendly is a competitor and that Brichler misappropriated trade secrets and violated his 2021 Non-Compete. (Doc. 1). Axcess concurrently filed a motion for a preliminary injunction. (Doc. 2). At an informal conference with the Court to discuss the preliminary injunction, the parties agreed to an expedited briefing and discovery schedule. (*See* 7/13/21 Notation Order). Upon discovering the 2020 DRA, Defendant requested a conference and the Court set a briefing schedule for the present motion. The Court has the parties' briefs and the motion is ripe for review.

## II. STANDARD OF REVIEW

### A. Motion to Compel Arbitration

"Under the Federal Arbitration Act, 9 U.S.C. § 2, a written agreement to arbitrate disputes which arise[ ] out of a contract involving transactions in interstate commerce … 'shall be valid, irrevocable and enforceable'" save any reason in law or equity to the contrary. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (quoting 9 U.S.C. § 2). A strong presumption in favor of arbitration applies but only if the parties have a valid agreement to arbitrate. "When deciding whether the parties agreed to arbitrate a certain matter ... courts generally ... should apply ordinary state-law principles that govern the formation of contracts." *First Options v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). And, under Ohio law, the opposite presumption governs the threshold question. That is, under Ohio law, "[w]hen there is a question as to whether a party has agreed to an arbitration clause, there is a presumption against arbitration." *Maestle v. Best Buy Co.*, 2005 Ohio 4120, ¶ 22 (Ohio Ct.App. Aug. 11, 2005).

4

The FAA generally applies to employment contracts with arbitration provisions. *McGee v. Armstrong*, 941 F.3d 859, 865 (6th Cir. 2019) (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001)). When considering a motion to compel arbitration, a court has four tasks:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout*, 228 F.3d at 714 (6th Cir. 2000) (internal citations omitted). However, on the second task, a court also may need to resolve who, the court or an arbitrator, is responsible for determining whether the scope of the agreement "covers a particular controversy," or, in other words, which of those two is responsible for determining "arbitrability." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 589 U.S. --, 139 S. Ct. 524, 527, 529 (2019).

B. **Motion to Dismiss**

The proper vehicle when requesting dismissal of a case in favor of arbitration is pursuant to Fed. R. Civ. P. 12(b)(6). "A party's 'failure to pursue arbitration' in spite of a compulsory arbitration provision means that the party has failed to state a claim upon which relief can be granted." *Pinnacle Design/Build Grp., Inc. v. Kelchner, Inc.*, 490 F. Supp. 3d 1257, 1262 (S.D. Ohio 2020) (quoting *Knight v. Idea Buyer, LLC*, 723 F. App'x 300, 301 (6th Cir. 2018)).

In reviewing a Rule 12(b)(6) motion, a court ordinarily would examine the complaint to determine whether it contained "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A district court examining the sufficiency of a complaint must accept the well-pleaded allegations of the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *DiGeronimo Aggregates*, LLC v. Zemla, 763 F.3d 506, 509 (6th Cir. 2014).

On a Rule 12(b)(6) motion, a district court "may consider exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (internal quotations and citations omitted). Thus, the Sixth Circuit has taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). *See Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001). The ability of the court to consider supplementary documentation has limits, however, in that it must be "clear that there exist no material disputed issues of fact concerning the relevance of the document." *Mediacom Se. LLC v. BellSouth Telecomms., Inc.*, 672 F.3d 396, 400 (6th Cir. 2012) (internal quotation and citation omitted).

### III. ANALYSIS

In this case, the Court only needs to answer the threshold question of whether the parties had a valid agreement to arbitrate this dispute. Because the 2021 Non-Compete

supersedes the 2020 DRA on the subject matter of this dispute, the Court finds the parties do not have a valid agreement to arbitrate this dispute..

The Sixth Circuit's decision in *Dottore v. Huntington National Bank* is instructive. 480 F. App'x 351 (6th Cir. 2012). According to the court of appeals in *Dottore*, "contract integration provides that where the parties' intent is sought to be ascertained from several writings, a prior writing will be rejected in favor of a subsequent one if the latter writing contains the whole of the parties' agreement." *Id.* (citing *TRINOVA Corp. v. Pilkington Bros.*, P.L.C., 70 Ohio St.3d 271, 275, 638 N.E.2d 572, 575 (Ohio 1994)). In *Dottore*, the parties had executed a valid arbitration agreement that applied to investment fund accounts. A successor corporation and the plaintiff in the case subsequently executed an agreement that stated, "[t]hese terms govern the operation of this account unless varied or supplemented in writing." *Dottore,* 480 F. App'x at 352. The subsequent agreement covered several subjects relative to the accounts, including "deposits," "withdrawals," and "unclaimed funds." *Id.* The subsequent agreement "[did] not include an agreement to arbitrate." *Id.* Nor did it incorporate the partiers earlier agreement to arbitrate. *Id.* As such, the Court found the parties' earlier agreement to arbitrate had been superseded. *Id.*

Here, as in *Dottore*, a subsequent agreement, the 2021 Non-Compete, covers the subject matter of the dispute, constitutes a complete agreement, and does not include an agreement to arbitrate. *Id.* at 353. These facts are clear on the face of the 2021 Non-Compete. The agreement contains a merger clause indicating the parties themselves intended that it would be the complete agreement on the "subjects in it." (Doc. 1-2, §9.2, PageID# 26). And the "subjects in it" include enforcement of the restrictive covenants

7

contained therein. For example, like its 2020 predecessor, the 2021 Non-Compete contains an acknowledgement that the Axcess may "obtain…an injunction…from a court of competent jurisdiction restraining any further breach…." (*Id.*, §4.1., PageID# 25). In Section 9.5, the 2021 Non-Compete states "any dispute" with regards to the 2021 Non-Compete "shall be exclusively litigated in a state or federal court…." (*Id.* at PageID# 27). Finally, the 2021 Non-Compete contains no arbitration agreement. (*Id.*). The 2021 Non-Compete thus supersedes the 2020 DRA on enforcement of the 2021 Non-Compete.

For these reasons, the Court finds the parties have no valid agreement to arbitrate this dispute. And, accordingly, Defendant's motion to compel arbitration must fail.

Brichler argues that the 2021 Non-Compete does not supersede the 2020 DRA. (Doc. 12 at 11-12). "There is only one provision in the 2021 Noncompete agreement that addresses the 'subjects' of how and where it may be enforced," Defendant asserts, citing to the Section 9.5 language: "any dispute among the parties related to …breach…of this Agreement shall be exclusively litigated in a court of competent jurisdiction." (Doc. 1-2, §9.5, PageID #27). Brichler concludes this is a venue clause that only applies if the avenues in the 2020 DRA have been exhausted. (Doc. 12 at 11).

Brichler's argument is unpersuasive for a few reasons. There is, in fact, more than one provision in the 2021 Non-Compete that covers enforcement of its terms. As noted, in addition to Section 9.5, which Brichler cites, the document contains the parties' acknowledgment that Axcess may seek an injunction from a court to restrain further breach of the Non-Compete. (Doc 1-2, §4.1, PageID# 25). Nonetheless, Section 9.5 of the 2021 Non-Compete—dictating that "any dispute" is "litigated"—would likely override

8

the 2020 DRA on its own. (*Id.*, §9.5, PageID #27). This is because the 2021 Non-Compete agreement is complete, addresses the relevant subject matter, and contains no arbitration clause. *Dottore*, 480 F. App'x at 351.

Brichler also argues Section 9.5 of the 2021 Non-Compete is "merely an exclusive venue clause" that does not displace the parties' obligation to arbitrate under the 2020 DRA. This reading is myopic. That section does include a venue clause. (Doc. 1-2, PageID# 27). ("The parties consent to venue and personal jurisdiction in [Hamilton County]."). But a lot comes before it, including a provision stating "[a]ny dispute among the parties related to compliance with or breach of any term of this agreement shall be exclusively litigated in a state or federal court…." (*Id.*). Brichler also fails to explain away the import of "any dispute." The unqualified phrase does not leave room for disputes where alternative dispute resolution has failed.

Brichler further argues that an agreement drafted to supersede the 2020 DRA ought to say so more clearly. Brichler says that <u>if</u> the 2021 Non-Compete were drafted to override the 2020 DRA, it would say: "any dispute…shall be exclusively *resolved* by litigation…." (Doc. 12 at 12-13) (emphasis added). Perhaps Brichler's re-written version is clearer. Under *Dottore*, however, the 2021 Non-Compete Agreement does not need to reach that level of specificity to supersede the 2020 DRA when it comes to subjects of the Non-Compete. Rather, the subsequent agreement only needs to contain the whole of the parties' agreement and address the subject of how the Non-Compete is enforced. *See Dottore* 480 Fed.Appx. at 351.

9

Because the 2021 Non-Compete controls on the "subjects in it," Brichler attempts a division of the "subject" into "an ex-employee's right to invoke mediation and/or arbitration," on the one hand, and the contents of the 2021 Non-Compete, on the other. (Doc. 12 at 13). The implication is that the 2021 Non-Compete does not in fact cover the same subjects as the 2020 DRA. (*Id.*).

The Court finds that it is counter-intuitive to split the "subject" based on the remedy provided. The 2020 DRA states, by use of an example, that an employee may arbitrate his non-competition agreement. (Doc. 12-1, §2.2). By contrast, the subsequent 2021 Non-Compete says Axcess may seek an injunction to enforce the 2021 Non-Compete and "any dispute shall be exclusively litigated in a court of competent jurisdiction." (Doc. 1-2, §9.5). The documents provide different procedures, but they unmistakably cover, in part, the enforcement of non-competition agreements. Nor does it matter, for present purposes, that the 2020 DRA and the 2021 Non-Compete are not completely coincidental. The Court is called to resolve a dispute regarding the subjects of the Non-Compete. Both documents cover the subject. But the 2021 Non-Compete, for the reasons stated, controls on those subjects.

As a fallback, Brichler seeks the benefit of a presumption in favor of arbitration. (Doc. 12 at 14). In support, Brichler cites this Court's decision in *FirstGroup America v. Finn*. No. 1:18-CV-326, (S.D. Ohio Nov. 21, 2018), (Doc. 12-7). *FirstGroup America* concerned the scope of an arbitration agreement. *Id.* On such questions, there is indeed a presumption in favor of arbitration. *See Stout v. J.D. Byrider,* 228 F.3d 709, 714 (6th Cir. 2000).

10

The question here is not about scope but whether there is an agreement to arbitrate in the first place. The Court has found there is not, at least with regard to the subjects in the 2021 Non-Compete.  For that reason, there is no presumption in favor of arbitration. *See Maestle*, 2005 Ohio 4120, ¶ 22 (Ohio Ct.App. Aug. 11, 2005).

The response is largely the same to Brichler's argument that ambiguities should be interpreted in favor of the non-drafting party. (Doc. 12 at 14). In the controlling document, the 2021 Non-Compete, the Court finds no ambiguities and thus no reason to rely on presumptions.

In general, Brichler's arguments appear to aim at a situation where multiple writings, on equal footing, are inconsistent, incomplete, or ambiguous. Indeed, the Court's task might have been different were it looking at the 2021 Non-Compete *in pari passu* with a concurrently executed dispute resolution agreement—or had the 2021 Non-Compete never been executed, leaving the conflicting 2020 agreements in place. But that is not the case. The 2021 Non-Compete supersedes on the relevant subject matter because it is a complete agreement and does not contain an agreement to arbitrate.  *Dottore*, 480 F. App'x 35, at 356.

For similar reasons, the Court cannot agree that the supplemental authority noticed by Brichler is controlling. *See Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 843 (6th Cir. 2021); (Doc. 34). *Boykin v. Fam. Dollar* focuses on how courts ought to handle factual disputes regarding the formation of an arbitration agreement. *Id.*  Here, the parties do not present a factual dispute. Both agree they executed the relevant documents: the 2020 DRA and the 2021 Non-Compete.  Following from the Sixth

11

Circuit's decision in *Dottore,* the Court has found the 2021 Non-Compete supersedes the 2020 NDA and thus there is no arbitration agreement. *Dottore,* 480 F. App'x at 353.

*Boykin* also reaffirms the principle that "…parties cannot be forced into an arbitral forum unless they actually agreed to arbitrate. And courts must confirm that they did so before shipping the dispute to arbitration…." *Boykin*, 3 F.4th at 843 (6th Cir. 2021). That is the process the Court has followed in the present case. The parties, after conducting expedited discovery, have not injected a factual dispute on the issue of an agreement to arbitrate. Instead, based on facts not at issue, the Court has found a prior agreement to arbitrate is no longer valid on the subject matter of this case. Thus, the Court cannot accept the *Boykin* case as controlling.

The Court makes this last point for clarity. As stated, the 2021 Non-Compete governs the enforcement of its own terms, which is also the subject matter of the present case.[2] In other words, the 2021 Non-Compete supersedes the 2020 DRA for the purposes of enforcing the 2021 Non-Compete. Thus, the parties do not have a valid agreement to arbitrate the subjects in the 2021 Non-Compete. The Court takes no position on whether the 2020 DRA still governs with regards to subject matter outside of the 2021 Non-Compete agreement, as that question is not properly before the Court.

Having found that the parties do not have a valid, current agreement to arbitrate this dispute, the Court will deny Brichler's request to dismiss or stay the case.

---

[2] Axcess also brings a cause of action grounded in state and federal law on trade secrets. (Doc. 1 at ¶¶ 61-76). Trade secrets are also unmistakably "subjects" of the 2021 Non-Compete. (Doc. 1-2, PageID# 21).

## IV.  CONCLUSION

Based upon the foregoing:

1. Defendant's motion to compel arbitration and stay or dismiss the case (Doc. 12) is **DENIED**;

**IT IS SO ORDERED.**

Date: 9/13/2021

s/Timothy S. Black
Timothy S. Black
United States District Judge