## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| CNG FINANCIAL, *et al.* | : | Case No. 1:21-cv-460 |
|     Plaintiffs, | : | |
| | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| ROBERT BRICHLER, | : | |
|     Defendant. | : | |

## ORDER
## GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM (Doc. 36) AND
## GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT (Doc. 45)

This civil case is before the Court on Plaintiff's motion to dismiss Defendant's counterclaim for failure to state a claim (Doc. 36) and the parties' responsive memoranda (Docs. 39 and 40); and Plaintiff's motion for leave to amend its complaint (Doc. 45) and the parties' responsive memoranda (Docs. 48 and 50).

## I. BACKGROUND

Plaintiff Axcess Financial Services, Inc. ("Axcess") creates consumer loan products and provides loan servicing.[1] (Doc. 1 at ¶¶ 8, 9). Starting in 2016, Axcess employed Defendant Robert Brichler. (*Id.* at ¶11). In that role, Brichler led software development efforts, managed data infrastructure and data security and served on executive leadership teams. (*Id.* at ¶¶ 17, 21, 27, 28).

---

[1] CNG Financial Corporation, Axcess's parent company, is also a Plaintiff. For the sake of ease, the Court refers to "Axcess" as descriptive of both Plaintiff parties.

Throughout his time at Axcess, Brichler and Axcess executed a series of non-competition ("Non-Compete") and dispute resolution agreements ("DRA").  (*See* Docs.1-2, 12-1, 12-2, 12-4, 12-5).

In 2020, Brichler executed a Non-Compete ("2020 Non-Compete"), and, at the very same time, a DRA ("2020 DRA"). (Docs. 12-2 and 12-4).  The 2020 Non-Compete contains prohibitions against employment with a competitor, misappropriating confidential information, and disparaging Axcess. (Doc. 12-4). The 2020 Non-Compete references the 2020 DRA. (*Id.* at PageID# 205).  By its terms, the 2020 DRA empowers either Brichler or Axcess to elect arbitration or mediation to resolve disputes with only a few enumerated exceptions not relevant here. (Doc. 12-4).

The 2020 Non-Compete and the 2020 DRA are seemingly inconsistent. The 2020 Non-Compete states, "*with the exception of an action for equitable relief arising from a breach of this Agreement*, any controversy…shall be governed by Axcess's Dispute Resolution Agreement…." (Doc 11-3 at PageID# 134) (emphasis added).  The 2020 DRA, on the other hand, states that either party can force arbitration for "covered claims" which include "any statutory, tort, contractual or *equitable* (i.e., non-monetary) claim." (Doc 12-2 at PageID# 184) (emphasis added). When describing the mutuality of obligations, the 2020 DRA is even more specific.  "For example," it reads, "you may elect to arbitrate our claim against you for violation of your *non-competition agreement* or for *misappropriation of company assets*." (*Id.* at PageID# 185) (emphasis added).

When promoted to CTO in February 2021, Brichler executed a new Non-Compete ("2021 Non-Compete"). (Doc. 1-2).  The 2021 Non-Compete was not paired with a dispute resolution agreement and contains no language referencing arbitration at all. (*Id.*).

In the 2021 Non-Compete, the parties agree that "any dispute among the parties related to compliance with or the breach of any term of this Agreement shall be exclusively litigated in a state or federal court of competent jurisdiction." (Doc. 1-2 at PageID# 27).  In another section titled "Certain Remedies," the agreement states that Axcess "shall be entitled as a matter of right…to obtain a restraining order or other equitable or extraordinary relief from any court of competent jurisdiction" to restrain a breach of the agreement. (*Id.* at PageID# 25-26).  In a merger clause, the parties further agree that the 2021 Non-Compete "contains the entire agreement of the parties about the subjects in it and it replaces all prior…agreements" except that previous "restrictive covenants…shall survive…."  (*Id.* at PageID# 26).

A few months after his promotion and his signing of the 2021 Non-Compete, Brichler left Axcess and joined another company, Lendly. (Doc. 1 at ¶36).  Axcess then filed the present suit alleging Brichler misappropriated trade secrets and violated his 2021 Non-Compete. (Doc. 1).  The parties engaged in expedited discovery, including depositions, ahead of briefing the motion for injunctive relief. (*See* Notation Order of July 13, 2021).

While the motion for injunctive relief was pending, Brichler filed a motion to compel arbitration (Doc. 12) and interposed an answer with a counterclaim. (Doc.  22).

In the counterclaim, Brichler alleged Axcess had breached the DRAs by failing to submit the present dispute to arbitration or mediation. (*Id.* at ¶¶21-26).

The Court denied Brichler's motion to compel arbitration. (Doc. 37).  Specifically, the Court found "the 2021 Non-Compete supersedes the 2020 DRA for the purposes of enforcing the 2021 Non-Compete.  Thus, the parties do not have a valid agreement to arbitrate the subjects in the 2021 Non-Compete." (*Id.* at 12).  Shortly after resolving the motion to compel, the Court then denied Axcess's motion for a TRO and a preliminary injunction. (Doc. 15).

Before this Court's Order denying the motion to compel arbitration, on September 10, 2021, Axcess moved to dismiss Brichler's counterclaim for breach of the DRA. In November 2021, just over a month after the Court's Order denying injunctive relief, Axcess moved for leave to amend the complaint to add Lendly as a party.

## II.  STANDARD OF REVIEW

### A.  Motion to Dismiss

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint, or a counterclaim, and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted."  To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the counterclaim contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S.

544 (2007)).  Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (citing *Twombly*, 550 U.S. at 555).  In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'"  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)).  Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.*

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678.  A claim is plausible where a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the case shall be dismissed.  *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

### B.  Motion for Leave to Amend

Pursuant to Fed. R. Civ. P. 15(a), "leave to amend a pleading shall be freely given when justice so requires."  *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998) (citing *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994)).  Rule 15(a) embodies "a liberal policy of permitting amendments to ensure the determinations of claims on their merits."  *Marks v. Shell Oil Co.,* 830 F.2d 68, 69 (6th Cir. 1987).  In deciding a party's motion for leave to

amend, the Court of Appeals for the Sixth Circuit has instructed that district courts must consider several elements, including "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendments . . . ." *Coe, 161 F.3d at 341.* In the absence of any of these findings, leave should be "freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Ultimately, determination of whether justice requires the amendment is entrusted to the sound discretion of a district court. *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986).

### III. ANALYSIS

### A. Axcess's Motion to Dismiss Brichler's Counterclaim (Doc. 36)

Brichler claims Axcess "breached the Dispute Resolution Agreements by filing this action rather than mediating and/or arbitrating [its] dispute with Brichler, as required by the Dispute Resolution agreements." (Doc. 22 at ¶24). However, Brichler has not pleaded a basis for relief because the Court has already found that the DRA was superseded and replaced, leaving the parties without an agreement to arbitrate.

In other words, the law-of-the-case doctrine compels this Court to grant Axcess's motion to dismiss Brichler's counterclaim. That doctrine ensures "the same issue presented a second time in the same case in the same court should lead to the same result." *GMAC Mortg., LLC v. McKeever*, 651 F. App'x 332, 339 (6th Cir. 2016). Such is the situation here. The Court has already found the 2021 Non-Compete supersedes the 2020 DRA. (Doc. 37 at 11). This is because the plain language of the 2021 Non-

Compete suggests that it controls on the subjects within it. (*Id.*).  Among those subjects are the enforcement of the Non-Compete.  Most importantly, the 2021 Non-Compete, the controlling document, contains no provision to arbitrate. (*Id.* at 7).  Therefore, the parties have no agreement to arbitrate. *See Dottore v. Huntington Nat. Bank*, 480 F. App'x 351, 353 (6th Cir. 2012)

Brichler's counterclaim for breach of contract necessarily depends on the existence of a valid agreement to arbitrate. (Doc. 11 at ¶¶21-23).  The Court's determination that the parties have no valid agreement to arbitrate is the law of the case. (Doc. 37). For that reason, the Court grants Axcess's motion to dismiss Brichler's counterclaim for breach of the DRAs. (Doc. 36).

### B.  Axcess's Motion to Amend (Doc. 45)

The Court will grant Axcess's motion to amend to add Lendly as a party.  The grounds for the amendment are straightforward.  During expedited discovery, Axcess claims to have discovered a fuller view of Lendly's involvement and knowledge in hiring Brichler despite the existence of the Non-Compete. (Doc. 45 at PageID# 2682).  Axcess now requests leave to amend to add Lendly as a Defendant.  Leave to amend should be "freely given when justice so requires" and, in this case, the Court determines there is adequate reason to grant the leave requested. *Coe*, 161 F.3d at 341 (6th Cir. 1998) (citing *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994)).

Brichler's arguments contra are unpersuasive. (Doc. 48).  Brichler says that Axcess has known of Lendly's awareness of the Non-Compete since the before the case was filed. (Doc. 48 at PageID# 2777). T he Court finds this assertion unimportant.

Expedited discovery could have revealed a much finer level of detail about Lendly's involvement in the transaction.

Brichler next argues Axcess has engaged in undue delay because it "sat" on whatever new information it learned from early August 2021, when depositions concluded, until mid-November 2021, when Axcess filed for leave to amend. (*Id.*).  The Court does not find that three-and-a-half months is undue delay in the context.  The parties went through discovery quickly and initially deployed that new information at the existing question of injunctive relief.  It seems reasonable that Axcess may have only started examining Lendly's legal liability in earnest after the injunctive relief question was fully briefed.

It seems equally plausible and reasonable that Axcess would *reevaluate* Lendly's liability after the Court's Order's denying injunctive relief, since that Order engaged in a comprehensive analysis on the existence of a trade secret, the reasonableness of the Non-Compete, and other issues that necessarily bleed into the merits of the case.  (Doc. 38).  The Court docketed this Order denying injunctive relief on September 14, 2021, only about a month before Axcess moved for leave to amend. (*Id.*).

Whatever the reason, Axcess's behavior does not indicate it sat on its rights to unduly gain an advantage.  Since this case is in a very preliminary posture, the strategic upside of waiting three-and-a-half months to add a party—a party that theoretically could have been added earlier—is minimal to non-existent. Brichler asserts Axcess has gained an advantage because the key depositions of the parties have already been completed when Axcess moved to add Lendly. (Doc. 48 at PageID# 2778).  Since Lendly was not a

party and therefore not afforded a right to participate in those depositions, Brichler asserts, Lendly is now at a disadvantage. (*Id.*). And so is Brichler, because, according to the argument, Brichler's counsel could not consult with Lendly's counsel at the depositions. (*Id.*).

The strategy used and advantages gained by Axcess, as alleged by Brichler, are abstract rather than real. Brichler provides no reason to believe that Lendly is actually at a disadvantage because it did not have its own counsel in the room during these depositions. It is also worth remembering that, after expedited depositions and briefing on the matter, the Court *denied* injunctive relief to Axcess—Lendly's soon-to-be adversary. If this Court finds there has been actual unfairness to Lendly resulting from it having no official status at earlier depositions, the Court may take appropriate action by discovery order. For now, there is no apparent indication that Lendly will suffer prejudice by coming into this case at the present moment.

Brichler cannot align his argument with any compelling authority. The sole case cited in support, *McNulty v. Arctic Glacier, Inc.,* speaks to a set of facts nowhere near those of the present dispute. *See* No. 08-CV-13178, 2016 WL 465490, at *20 (E.D. Mich. Feb. 8, 2016) ("Plaintiff received the four 'new' DOJ recordings in March, 2012: he has waited over three years to seek leave to amend based on those recordings."). For that reason, Brichler's argument is not well-taken.

The Court grants Axcess's motion for leave to amend. Accordingly, Axcess may file its proposed amended complaint which includes Lendly as a party.

## IV. CONCLUSION

Based upon the foregoing:

1.    Plaintiff Axcess's motion to dismiss Defendant-Counterclaimant's counterclaim (Doc. 36) is **GRANTED**.

2.    Plaintifff Axcess's motion for leave to amend is **GRANTED**. (Doc. 45). Plaintiff may file its proposed amended complaint forthwith.

**IT IS SO ORDERED.**

Date:  3/8/2022

Timothy S. Black
United States District Judge